United States District Court
Southern District of Texas
**ENTERED**
March 24, 2017
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| METRO HOSPITALITY PARTNERS, LTD, *d/b/a* CROWNE PLAZA HOTEL, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-15-1307 |
| LEXINGTON INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

When a business sues its property insurer and the type of damage is clearly covered, the usual pattern is that the insurance company has failed to pay anything, has failed to pay anything close to what the insured claimed, or has taken too long to pay. This case is different. Here, the property insurer promptly adjusted the claim the insured presented and paid a large sum within the month after the hailstorm that damaged the insured's hotel. The insurer identified and paid what it concluded were the remaining amounts owed about two months after that. The insured claimed that more money was owed. The insurer asked for documents and information substantiating the demand for additional payment. The insured refused. The policy required the insured to "cooperate" with the insurer. What we have here, says the insurer, is a failure to cooperate.[1] What we have here, says the insured, is a breach of the insurance contract and of the duty of good faith and fair dealing.

The insured, Metro Hospitality Partners, Ltd., owns a hotel in Houston, Texas. After a hailstorm damaged the hotel, Metro promptly notified its property insurer, Lexington Insurance Company. Lexington quickly responded, inspected, adjusted, paid part of the claim as an advance, and identified the amount of covered damage and the amount it owed. The total amount approved

---

[1] COOL HAND LUKE (Warner Brothers Entertainment, Inc. 1967).

and paid before subtracting the deductible and depreciation was $820,649.42. The parties disputed whether the hailstorm damage justified a insurer-paid new roof, or whether normal wear and tear made a new roof Metro's responsibility.

Metro presented a $2,664,427.44 estimate of its added covered losses over five months later, including the cost of a new roof, again without substantiating documents or information. Lexington asked for substantiation. Without complying ,and before Lexington issued a final decision, Metro sued. After filing this suit, Metro submitted an estimate for about $10 million in covered losses and damages. Before and after Metro filed this lawsuit, Lexington continued to ask for documents and information supporting the claims. Metro asserted and continues to assert that Lexington did not need most of the documents or information and therefore that Metro had no duty to provide them.

After discovery, Lexington moved for summary judgment, Metro responded, and Lexington replied. (Docket Entry Nos. 21, 23, 25). Based on a careful review of the motion, response, and reply; the record; and the relevant law, this court grants Lexington's motion for summary judgment dismissing Metro's extracontractual claims for breach of the duties of good faith and fair dealing. The court denies Lexington's motion for summary judgment on the breach of contract claims, but without prejudice and with leave for Lexington to reurge its motion after Metro complies with the following Order:

> The insured, Metro Hospitality, is ORDERED to produce the documents and information the insurer, Lexington Insurance, previously sought, updated as explained below, relating to Metro's claims that Lexington pay additional losses and damages. To avoid confusion, Lexington must give Metro a copy of the outstanding requests, updated as necessary to reflect information learned and events occurring since the requests were made, no later than **April 7, 2017**. Metro is ordered to fully respond

2

no later than **May 8, 2017**.

Counsel and a representative from each party are also ORDERED to appear for a hearing on **May 16, 2017**, at 5:00 p.m., in Courtroom 11-B. The court will review the documents and information produced with counsel and the parties, and will set a scheduling and docket control order to expeditiously and fairly resolve the remaining issues in the case.

The reasons for these rulings are stated below.

## I. Background

### A. Factual Background[2]

Metro owns and operates the Crowne Plaza Hotel in Houston, Texas. The hotel is made up of seven buildings built between 1965 and 1985. Lexington Insurance Company issued Policy Number 64203238-02, with effective dates of December 4, 2012 to December 4, 2013. (Docket Entry No. 21, Ex. G).

On April 27, 2013, a hailstorm passed through Houston. Metro reported storm damage to the

---

[2] The summary judgment evidence includes deposition excerpts from: Steve Hardgrave, Lexington's expert (Docket Entry No. 21, Ex. B); Shabahram Yazdani-Beioky, Metro Hospitality's owner (Docket Entry No. 23, Ex. C); Byron Woodword, a National General Adjuster for Vericlaim (Docket Entry No. 21, Ex. E); Sina Maria Alvarado, Lexington's claims handling expert (*Id.*, Ex. F); The record also includes affidavits and declarations from: Byron Woodward, a National General Adjuster for Vericlaim, Inc. (Docket Entry No. 21., Ex. A); Billy Haley, Metro Hospitality's expert (Docket Entry No. 23, Ex. A); Hoyt Long, Metro Hospitality's expert (*Id.*, Ex. B); Shabahram Yazdani-Beioky, Metro Hospitality's owner (*Id.*, Ex. C); The record evidence also includes the insurance policy (Docket Entry No. 21, Ex. G); Metro Hospitality's initial disclosures (*Id.*, Ex. D), Metro Hospitality's answers to interrogatories (*Id.,* Ex. E); Lexington's designation of experts (*Id.*, Ex. F); the April 29, 2013 property loss notice (Docket Entry No. 23, Ex. G); the expert report of Dr. Lee E. Branscome, Lexington's expert (*Id.*, Ex. H); the original state-court petition and answer (*Id.*, Exs. I–J); emails between Woodward and a Lexington claims examiner (*Id.*, Ex. K); a May 27, 2013 letter from Lexington to Yazdani (*Id.*, Ex. L); emails between Metro Hospitality's public adjuster and Lexingon's adjuster (*Id.*, Exs. M, S); a February 11, 2014 letter from Vericlaim including the estimate prepared by Metro Hospitality's public adjuster (*Id.*, Ex. N); a June 11, 2014 letter from Vericlaim to Metro Hospitality (*Id.*, Ex. O); the July 22, 2014 report by Vericlaim (*Id.*, Ex. P); the October 17, 2014 report by Vericlaim (*Id.*, Ex. Q); a February 24, 2015 letter from Vericlaim to Metro Hospitality's independent adjuster (*Id.*, Ex. R); an August 5, 2013 internal Lexington email (*Id.*, Ex. T); emails between Yazdani and Lexington (*Id.*, Ex. U); and a stipulation for the business-interruption claim (*Id.*, Ex. V).

3

hotel to Lexington on April 29, 2013. The next day, Lexington assigned Byron Woodward of Vericlaim, Inc. to adjust the loss. Woodward met with Metro on May 1—less than a week after the hailstorm—and started inspecting the hotel on May 4—less than a week after Metro reported its claim. (*Id.*, Ex. A at ¶ 4). Woodward quickly hired three experts to help adjust the claim: Joseph Kennedy from LWG Consulting, Inc., to assess the HVAC system; Howard Jones (and later Steve Hardgrave) from JS Held, to look at interior damage; and James R. Bailey, Ph.D., from Exponent, Inc., to assess the roof. (*Id.*).

It did not take long for disputes to arise. Hardgrave from JS Held reported in a May 4 email that the claims-adjustment process "might get ugly" because Metro's principal and owner, Shabrahram Yazdani-Beioky, told Hardgrave in a meeting that "if this doesn't go my way my PA and his team are ready." (*Id.*, Ex. B-3). Woodward sent Vericlaim's First Report to Lexington within a month after the notice of loss. The report noted that Metro reported its roof contractor's finding that the entire roof needed replacing. Metro did not, however, identify the roof contractor. Metro also reported that it had cancelled large events and rented damaged rooms at discounted rates. Metro did not respond to requests for information about the claimed income loss. (*Id.*, Ex. A at ¶¶ 8–9).

By May 23, 2013, Lexington had advanced Metro $249,000 on its claims. (*Id.* at ¶ 6). Based on the initial inspections, Lexington, through Kennedy at LWG Consulting, identified an additional $272,738.04 in compensable actual-cash-value losses to the HVAC system. Through Jones at JS Held, Lexington identified an added $412,961.56 in compensable actual-cash-value losses to the hotel building interiors. (*Id.* at ¶ 5). Dr. Bailey—who has a Ph.D. in engineering—found no covered roof damage because the problems resulted from age and poor maintenance, not from the recent hailstorm damage, and reported his findings to Lexington. (*Id.*).

On July 2, 2013, Woodward asked Metro for documents and information supporting its

claimed losses. Woodward asked Metro for quotes or bids on the cost and work needed to replace the roof, the HVAC, and skylights, and to make interior repairs. (*Id.* at ¶ 9; *id.*, Ex. A-5). Dan Parra responded for Metro on July 16, 2013. Parra stated that he was collecting the information and would send it as received. (*Id.* at ¶ 9). But on July 17, 2013, Yazdani sent Woodward at Vericlaim a letter complaining that Lexington had "asked for several categories of documents . . . not necessary . . . to adjust this claim," which was "unreasonably delaying the [claims-adjusting] process." (*Id.* at ¶ 9; *id.*, Ex. A-6; *id.*, Ex. C-16).

Nonetheless on July 25, 2013, Yazdani signed a statement of loss agreeing that $820,649.42 was the total covered damage amount. The signed statement noted Metro's failure to substantiate "Emergency Remediation/Extraction," "Business Personal Property," or "Business Income" losses. (*Id.*, Ex. A at ¶ 7; *id.*, Ex. A-1). Yazdani also signed sworn proofs of loss in early August, one for the advance payment of $249,000 and one for the added $336,649.42 payment—the total undisputed losses that JS Held identified, less depreciation and deductible. (*Id.*, Exs. A-2, A-3). After Lexington's last payment, Vericlaim issued another report noting that the file "remains open pending insured providing the information regarding the emergency services, carpet pricing and financial information needed to continue with the settlement of this claim." (*Id.*, Ex. A at ¶ 10; *id.*, Ex. A-8).

On January 28, 2014, Metro submitted a "Xactimate" damage estimate for an additional $2,664,427.44 from its public adjuster. Metro submitted no underlying documents or added information. (Docket Entry No. 23, Ex. C at ¶ 12; *id.*, Ex. N at 4). Vericlaim's sixteenth report, dated March 16, 2015, stated that it had not received "anything from the CPAs" on Metro's claimed business-interruption losses, extra expenses, or revenue losses. (Docket Entry No. 21, Ex. A at ¶ 11). Metro instead filed this suit. Metro subsequently submitted a second "Xactimate" damage estimate from another public adjuster, this time claiming close to $10 million in added damages, again without

5

supporting documents and information.³  (Docket Entry No. 23, Ex. A at ¶ 25; *id.*, Ex. A-6).

### B. Procedural Background

Metro sued Lexington on April 14, 2014 in Texas state court, before Lexington had made or issued its final claim determination.  (Docket Entry No. 1-5).  Metro asserted a breach of contract claim for Lexington's alleged failure to pay the total Metro claimed was due under the insurance policy.  (*Id.* at ¶ 12).  Metro also alleged that Lexington breached both common-law and Texas statutory duties of good faith and fair dealing.  (*Id.* at ¶¶ 13–15).  Lexington timely removed on the basis of federal diversity jurisdiction.  (Docket Entry No. 1).  Discovery and this dispositive motion followed.

## II. The Applicable Legal Standards

### A. Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex*

---

³ Lexington also states, without a record citation, that Metro sent a $3.7 million demand, without supporting documents.  (Docket Entry No. 21 at ¶ 17).  Because this information is not in the record, the court declines to consider it.

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable

7

to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

## III.  Analysis

### A.  The Extracontractual Claims

Metro alleged that Lexington breached both common-law and Texas statutory duties of good faith and fair dealing. (Docket Entry No. 1-5 at ¶¶ 13–15). The standard for the common-law claim for bad-faith breach of the duty of good faith and fair dealing carries over to statutory liability claims under the Texas Insurance Code. Both have the same predicate for recovery. The absence of evidence on one disposes of the other. *See Reyna v. State Farm Lloyds*, Civ. No. 7:14-cv-420, 2016 WL 3654761, at *8 (S.D. Tex. July 8, 2016) (citing *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, review denied) (citing *Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922–23 (Tex. 2005) (per curiam)); *Emmert v. Progressive Cnty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied)).

Lexington moved for summary judgment on the ground that Metro did not present evidence of any injury independent of the injuries it claimed resulted from Lexington's denial of the disputed covered loss. *See Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) (citing *Provident American Ins. Co. v. Castaneda*, 988 S.W.2d 189, 198–99 (Tex. 1998) ("There can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits.")); *see also Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 808 n.1 (5th Cir. 2010) (rejecting the plaintiff's argument that the "denial of insurance proceeds, standing alone, entitled it to recover on its extracontractual claims" because that "assertion [did] not comport

with this court's case law").

Metro has presented no evidence showing or supporting an inference that it suffered an injury from the extracontractual claims independent from the injury resulting from the denial of policy benefits. Instead, Metro argues that it is not required to show an independent injury. In *Vail v. Texas Farm Bureau Mutual Insurance Co.*, 754 S.W.2d 129 (Tex. 1988), the Texas Supreme Court held that an insured wrongfully denied policy benefits need not show an injury independent of the denied policy benefits. *Id.* at 136. In *Parkans International*, 299 F.3d at 519, the Fifth Circuit interpreted a more recent Texas Supreme Court opinion—*Provident American Ins. Co. v. Castaneda*, 988 S.W.2d 189, 198–99 (Tex. 1998)—as overruling *Vail* sub silentio. In 2015, the Fifth Circuit certified the question of whether an independent injury is required for a Chapter 541 claim to the Texas Supreme Court. *See In re Deepwater Horizon*, 807 F.3d 689, 698 (5th Cir. 2015), *certified question accepted* (Dec. 4, 2015). Metro urges this court to wait for the Texas Supreme Court to answer the question certified in 2015. *In re Deepwater Horizon*, 2015 Tex. LEXIS 1112, *1 (Tex. Dec. 4, 2015). But the certified question has been withdrawn. *In re Deepwater Horizon*, No. 15-0891, 2016 Tex. LEXIS 305 at *1 (Tex. Apr. 8, 2016) ("CAUSE DISMISSED AS MOOT: certified question from the U.S. Court of Appeals for the Fifth Circuit, withdrawn."). The Fifth Circuit and Texas Supreme Court's most recent decisions bind this court.

The decisions in *Parkans International* and *Provident American Insurance* require an insured like Metro to show an injury independent of the insurer's breach of contract to proceed on extracontractual claims for breach of the duty of good faith and fair dealing, like those Metro asserts here. Lexington's motion for summary judgment dismissing the extracontractual claims is granted.

9

### B.     The Breach of Contract Claim

Metro also alleged that Lexington breached the insurance policy by failing to pay adequate compensation for its claim. (Docket Entry No. 1-5 at ¶ 12). A plaintiff claiming breach of an insurance contract must show that the contract covered the loss; that the contract was breached; that the insured was damaged by the breach, and the resulting damages. *Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 569 (S.D. Tex. 2015) (citing *Block v. Employers Cas. Co.*, 723 S.W.2d 173, 178 (Tex.App.—San Antonio 1986), *aff'd*, 744 S.W.2d 940 (Tex. 1988)). The insured has the burden to plead and prove that the insurance policy covers the losses claimed and the benefits sought. *Id.* (citing *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001)).

Under Texas law, insurance contracts are subject to the same construction rules as other contracts. *Performance Autoplex II Ltd. v. Mid–Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). The courts are to give effect to the parties' written expression of their intent, *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004), and read all parts of the policy together. *Id.* If the insurance policy is not ambiguous, "courts must give the words their plain, ordinary and generally accepted meaning unless the policy shows that the words were meant in a technical or different sense." *Fed. Deposit Ins. Corp. v. Firemen's Ins. Co. of Newark*, N.J., 109 F.3d 1084, 1087 (5th Cir. 1997). In this case, the parties do not assert ambiguity.

Lexington moves for summary judgment on the ground that Metro did not comply with the policy and therefore cannot sue its insurer for breaching that policy. The policy required Metro to comply with policy requirements before suing Lexington for contract breach. It stated:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twenty-four months next after inception of the loss.

(Docket Entry No. 21, Ex. G at § 28). Similar "no action" or "suits against us" clauses are widely used and are enforceable as a condition precedent under Texas law. *See Harville v. Twin City Fire Ins. Co.*, 885 F.2d 276, 279 (5th Cir. 1989) (citing *Great American Ins. Co. v. Murray*, 437 S.W.2d 264, 265 (Tex. 1969)); *see also Johnson v. Liberty Mut. Fire Ins. Co.*, Civ. No. 4:14-cv-604, 2015 WL 11170153, at *2 (E.D. Tex. Oct. 30, 2015).

Lexington claims that Metro breached the "assistance and cooperation of the insured" clause, and that the breach bars Metro's suit under the "no suits" clause. The "assist and cooperate" clause states:

> The Insured shall cooperate with the Company, and, upon the Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

(Docket Entry No. 21, Ex. G at § 30). Lexington asserts that it made multiple requests to Metro for documents and information supporting its claims and that Metro either provided nonresponsive materials or none at all. As an example of Metro's failure to cooperate, Lexington notes that Metro did not provide a proof of loss, although the policy requires it:

> In the event of loss or damage hereunder it is a condition precedent to the Insured's right of recovery that the Insured, within 90 days following demand therefor by the Company, render a signed and sworn proof of loss to the Company or its appointed representative stating: the place, time, and cause of the loss, damage, or expense; the interest of the Insured and all others in the damaged or destroyed property; the value of the property involved in the loss; and the amount of loss, damage, or expense.

(Docket Entry No. 21, Ex. G at § 24). Lexington presented a sworn affidavit from Byron Woodward, the Vericlaim adjustor who worked on the Metro claim for Lexington. Woodward's affidavit states

11

that, "[t]o my knowledge, Lexington and Vericlaim did not receive a response to the [request for a proof of loss letter]." (Docket Entry No 21, Ex. A ¶ 12). Metro does not controvert this evidence.[4] It does not identify or submit summary judgment evidence that it presented a proof of loss as the policy required. The record evidence establishes that Metro did not provide a proof of loss.

Metro argues that Lexington did not plead the failure to provide a proof of loss as a condition precedent in its answer and therefore cannot raise it in its summary judgment motion. This argument fails to recognize that Lexington does not assert the proof-of-loss requirement as a condition precedent. Instead, Lexington incorporates Metro's failure to submit a proof of loss into its argument that Metro breached the contract requirement to cooperate, and that this breach bars it from bringing this suit under the "no suits" clause. (Docket Entry No. 25 at ¶ 10). Metro's pleading argument is unpersuasive.

Metro also argues that it did not have to comply with the proof-of-loss provision because it was void. Metro points to TEX. CIV. PRAC. & REM CODE § 16.071(a), which states:

> A contract stipulation that requires a claimant to give notice of a claim for damages as a condition precedent to the right to sue on the contract is not valid unless the stipulation is reasonable. A stipulation that requires notification within less than 90 days is void.

Case law forecloses Metro's argument. The Fifth Circuit rejected a similar argument by distinguishing "event of loss or damage" from a "claim for damages." *Ridglea Estate Condo. Ass'n v. Lexington Ins. Co.*, 415 F.3d 474, 478 (5th Cir. 2005), *as amended on reh'g* (Aug. 10, 2005) (citing *Community Bank & Trust v. Fleck*, 107 S.W.3d 541, 542 (Tex. 2002); *American Airlines Employees*

---

[4] Metro argues that this sentence from Woodward's affidavit is incompetent summary judgment evidence because the sentence starts with "to my knowledge." Metro cites no cases supporting its argument. Woodward does not disavow personal knowledge. To the contrary, Metro recognizes that Woodward was the claims adjuster on the file and does not challenge the personal knowledge he had from that role.

*Federal Credit Union v. Martin*, 29 S.W.3d 86 (Tex. 2000)).  A notice of a loss, as in a proof-of-loss document, is not a "claim for damages," but is instead a "notice of the happening of an event upon which liability may or may not result."  *Id.*  (quoting *Commercial Standard Insurance Co. v. Harper*, 103 S.W.2d 143, 145 (Tex. 1937)).  As a result, § 16.071(a) does not make this provision void.

Metro also argues that Lexington waived its ability to assert the failure to provide a timely proof of loss through its conduct.  Metro notes that Lexington continued to "adjust and attempt to settle Metro's claim long after the time for filing a proof of loss pursuant to Lexington's September [16], 201[3], 'demand' expired."  (Docket Entry No. 23 at ¶ 27).  For a year after the date for filing a proof of loss expired, Lexington's adjuster met with Metro's public adjuster and received loss estimates.  Lexington "continued to communicate with, [and] solicit and obtain information from" Metro to adjust and try to settle the claim.  Metro argues that because Lexington did not deny liability based on Metro's failure to file a proof of loss during this year-long process, and instead continued asking for information, working to finish adjusting the claim, and trying to reach a final decision, Lexington waived its right to assert the proof-of-loss requirement.  This argument seems to fall into the "no-good-deed-goes-unpunished" category.  It is also unsupported and unpersuasive.

Metro signed a sworn proof of loss for the advance payment on August 5, 2013, and it signed a second sworn proof of loss on August 9, 2013.  (Docket Entry No. 21, Exs A-2, A-3).  Metro forwarded the documents to Lexington on or about August 9, after clarifying that the amount was only "the claim to date."  (Docket Entry No. 23, Ex. C at ¶ 10).  By August 25, 2013, Lexington had paid the undisputed part of Metro's claim.  (Docket Entry No. 21, Ex. A-7).  On September 16, 2013, Lexington sent a demand to Metro to file its proof of loss on the outstanding, disputed portion of Metro's claim.  (*Id.*, Ex. A-9).  Under Texas law, by paying the undisputed part of the claim during the insured's time to submit its proof of loss for an additional part of the claim, the insurer does not

13

waive the right to require the insured to file its proof of loss on the outstanding claim. *See Ridglea Estate Condo. Ass'n*, 415 F.3d at 477 (citing *Stonewall Ins. Co. v. Modern Expl., Inc. v. Modern Expl., Inc.*, 757 S.W.2d 432, 436 (Tex. App.— Dallas 1988, no writ) ("A waiver of a notice requirement occurs when the insurer denies liability within the time limited for giving notice."); *cf. Hanover Ins. Co. of New York v. Hagler*, 532 S.W.2d 136, 138 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.) (a voluntary payment of a portion of the claim before the time for filing the proof of loss expired was "some evidence of waiver," but the payment did not establish as a matter of law that the insurer did not intend to insist on a proof of loss for the remainder of the claim).

Metro has cited no authority supporting its argument that an insurer who continues to try to adjust a claim, rather than immediately denying a claim for failure to provide timely proof of loss, waives the right to assert the contract provision requiring timely proof-of-loss submissions. The argument fails.

Metro's primary argument is that it did not breach the assist-and-cooperate clause by refusing to comply with Lexington's requests because most of the requested documents and information were irrelevant and unnecessary to the claimed losses. As a result, Metro says, it did not have to comply. As an example, Metro cites the requests for documents and information substantiating its claim for lost business income during the investigation and adjustment process. Metro argues that after it filed suit, it abandoned the lost-business-income claim, so its presuit refusals are irrelevant. (Docket Entry No. 23, Ex. V). Metro also argues that Lexington and its experts had "unfettered access" to the hotel and that Metro had no obligation to provide information about what Lexington could have observed on its own. (*Id.*, Ex. F, pp. 44–45). Metro finally argues that Lexington "knew from day one" that Metro had performed the emergency and remedial water extraction and the cleanup work itself and therefore did not have invoices from third parties showing the costs. (*Id.*, Ex. E-4 at 13). None of

these arguments is persuasive.

Metro cites *Oram v. State Farm Lloyds*, 977 S.W.2d 163 (Tex. App.—Austin 1998, no pet.), to support its argument that the cooperation clause did not require compliance with Lexington's document requests. The insurer in *Oram* asked the insured to produce an engineering report. *Id.* at 168. At trial, the insured testified that he did not remember turning the report over, but that he did not intentionally withhold it. *Id.* There was evidence that another report was submitted to the insurer but was "missing" from the claim file. *Id.* The insured argued that the jury could reasonably have concluded that the engineering report at issue was submitted and then "gone missing." *Id.* The court found that the evidence did not conclusively establish the insured's failure to cooperate with the insurer's document request. *Id. Oram* is readily distinguishable. In *Oram*, there was a factual dispute about whether the insured had provided the requested document and thereby cooperated with the insurer's requests. The appellate court upheld the jury verdict in the insured's favor based on the conflicting evidence. Here, there is no question that Metro refused to comply with Lexington's requests for documents and information about the disputed portion of the claim.

Metro also cites *Colonial County Mut. Ins. Co. v. Valdez*, 30 S.W.3d 514 (Tex. App.—Corpus Christi 2000, no pet.). In *Colonial County*, the insured sued his car insurer for unfair settlement practices for failing to timely accept or deny his claim after his car was stolen. *Id.* at 522. The jury returned a verdict for the insured. On appeal, the insurer argued that it could not timely adjudicate the claim because the insured did not comply with requests for supporting documents. *Id.* (citing TEX. INS. CODE art. 21.55, § 3 (a) ("an insurer shall notify a claimant in writing of the acceptance or rejection of the claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer, in order to secure final proof of loss"). The insurer's request included: (1) a completed theft-statement form; (2) a power of attorney document; (3) a

15

completed proof of loss form; (4) copies of vehicle service records; (5) recent photographs of the vehicle; (6) a copy of the bill of sale or a licence registration receipt; (7) negotiable title or a copy of the title; and (8) all sets of keys to the vehicle. *Id.* The insured provided the theft-statement form as well as the power of attorney and the proof of loss. *Id.* The court found that the statute did not require the additional items in the insurer's request, and that the insurer had presented no evidence or argument explaining why it needed the extra documents. *Id.* at 523. "Common sense indicates that materials such as service records, sets of keys, and photographs of the vehicle are irrelevant to proving the loss of the vehicle." *Id.*

This case is also distinguishable. First, the claim here is not over the statutory requirement of specific information to process the claim, but the contract term requiring the insured to "cooperate with" the insurer and on the insurer's request and at its expense, "assist in effecting settlements, [and] in securing and giving evidence." (Docket Entry No. 21, Ex. G at § 30). Metro does not dispute that it refused to provide the supporting documents and information that Lexington requested to adjust the disputed portion of the claim. Second, the scope and extent of what Lexington asked for are clearly relevant and important to adjusting the disputed, unpaid part of Metro's claims. For example, the parties vigorously dispute the condition of the roof before the hailstorm. Lexington sought documents and information about the roof condition and the basis for the repair or replacement estimates. Metro refused to provide them. And although Metro points out that it abandoned its lost-business-income claim, it did not do so until after it filed this suit. Metro's failure to provide the information and documents relevant to this claim before it was abandoned is clearly relevant to the failure to cooperate. And the fact that Metro gave Lexington access to the hotel to inspect the conditions did not give Lexington the ability to identify or obtain documents or information on roof conditions before the storm or on the basis for Metro's other covered loss and damage estimates and

16

claims.

In short, Metro did not take reasonable steps to respond to Lexington's requests for information and documents that were in turn reasonably necessary to adjust the claim. Metro failed to assist and cooperate as required under the policy. Metro cannot bring suit under the terms of the "no suits" clause.

### C. The Remedy for Metro's Failure to Assist and Cooperate

Lexington asks this court to dismiss the case because Metro's breach of the assist-and-cooperate clause bars it from bringing this suit under the "no suits" clause. The court agrees that until Metro complies, Lexington has no obligation to pay any part of the disputed portion of the claim. But the court does not agree that dismissal now on the merits, as opposed to an abatement to allow Metro one more opportunity to assist and cooperate, is appropriate.

"In the case of an insurer trying to enforce a condition precedent . . . a proper remedy is abatement—or a stay of the proceedings—rather than barring the claim." *U.S. Pecan Trading Co. v. Gen. Ins. Co. of Am.*, No. 08-cv-347, 2008 WL 5351847, at *2 (W.D. Tex. Nov. 6, 2008) (citing *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 735 (Tex. App.—Houston [14 Dist.] 2003, no pet.)). Lexington argues that the court should grant its motion for summary judgment on the merits because Metro's long and persistent record of noncompliance makes abatement futile. Lexington argues that the only conclusion is that "Metro has not provided the information necessary to complete a proof of loss because it cannot provide the requested information." (Docket Entry No. 21 at 18 n.57). But in cases with similar facts, courts usually abate or stay for brief periods to allow the insured one more chance to provide requested documents or information supporting its claim for covered losses, if it can do so. *See, e.g., Brown v. State Farm Lloyds*, Nov.10-63, 2012 WL 1077668, at *4 (S.D. Tex. Mar. 29, 2012) (denying a summary judgment motion without prejudice and staying

17

the case until the insured provided the insurer with "all documents previously requested in support of his claimed loss"); *Rossco Holdings, Inc. v. Lexington Ins. Co.*, Civ. No. 09-cv-04047, 2011 WL 1363799, at *3 (S.D. Tex. Apr. 11, 2011) (same); *cf. Griggs v. State Farm Lloyds*, 181 F.3d 694, 703 (5th Cir. 1999) (affirming summary judgment for the insurer after the insured failed to comply with conditions precedent to coverage only after "[t]he district court. . . order[ed] State Farm Lloyds to provide an itemized list of the required documentation and order[ed the insured]to produce some reasonably comprehensible proof of his loss").

Lexington's remaining arguments do not weigh against a brief stay or abatement in this case. It argues that Metro has not presented evidence that the insurance policy was breached. This argument however, folds into Lexington's contention that Metro failed to provide documents or information supporting its covered loss and damages claims. Lexington's argument that Metro failed to segregate damages is similar.[5]

Having said that, Lexington's frustration at giving Metro yet another chance is understandable. Metro repeatedly refused Lexington's reasonable requests for documents and information, while making ever-increasing payment demands. Lexington patiently kept the file and door open to allow Metro to respond. Metro responded by suing, alleging that Lexington breached its contract and its duties, exposing it to added damages, penalties, and fees, by failing to pay the claimed covered losses. All the while, Metro refused to comply with Lexington's reasonable requests to substantiate the claims. The court is aware of the time and steps Lexington has taken to allow Metro's compliance, to no avail. The time and effort already expended inform the court's decision

---

[5] Lexington also moves to strike Metro's experts. (Docket Entry No. 20). Metro's experts opine on the cause and amount of the damage suffered by the hotel. The motion to strike experts is denied without prejudice and may be reasserted depending on the extent of the documents and information Metro produces.

18

on how much time to allow Metro to comply now, as opposed to persuading the court to deny Metro the opportunity to do so.

This case is briefly stayed to allow Metro one more opportunity to provide Lexington with the documents and information it previously requested.[6]

## IV. Conclusion

Lexington's motion for summary judgment on Metro's extracontractual claims is granted. (Docket Entry No. 21). Lexington's motion for summary judgment on Metro's contract claim is denied, without prejudice and with leave to reurge after **May 16, 2017**, depending on Metro's compliance with the order entered below:

> Metro is ORDERED to produce the documents and information Lexington previously sought, updated as stated below, relating to Metro's claims that Lexington pay additional losses and damages. To avoid confusion, Lexington must provide Metro with a copy of the outstanding requests, updated as necessary, no later than **April 7, 2017**. Metro is ordered to fully respond no later than **May 8, 2017**. The court also ORDERS counsel and a representative from each party to appear for a hearing on **May 16, 2017, at 5:00 p.m.**, in Courtroom 11-B. The court will review the document and information production with counsel and the parties and will set a scheduling and

---

[6] This order does not cover or require the production of documents or information Lexington previously requested to support Metro's now-abandoned claim for loss of business income. (Docket Entry No. 23, Ex. V).

19

docket control order to expeditiously and fairly resolve the remaining issues in the case.

SIGNED on March 24, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge