# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| METRO HOSPITALITY PARTNERS, LTD, § <br> *d/b/a* CROWNE PLAZA HOTEL, § <br> § <br> Plaintiff, § <br> § <br> VS. § <br> § <br> LEXINGTON INSURANCE COMPANY, § <br> § <br> Defendant. § | CIVIL ACTION NO. H-15-1307 |

## MEMORANDUM AND OPINION

**I.  Background**[1]

The insured, Metro Hospitality Partners, Ltd., owns a hotel in Houston, Texas. After a hailstorm damaged the hotel, Metro promptly notified its property insurer, Lexington Insurance Company. Lexington quickly responded, inspected, adjusted, paid part of the claim as an advance, and identified the amount of covered damage. Lexington approved $820,649.42 and paid $585,699.60 after subtracting the deductible and depreciation. The parties disputed whether more money was owed under the policy. Metro filed this suit alleging that Lexington owed more under the policy and that Lexington also violated extracontractual Texas common-law and statutory duties of good faith and fair dealing.

Lexington moved for summary judgment that it had complied with its policy obligation. (Docket Entry No. 21). Lexington argued that Metro presented no evidence of any injury independent of the injuries it claimed resulted from Lexington's denial of the disputed covered loss and therefore Metro could not recover on its extracontractual good-faith and fair-dealing claims. This court agreed, following binding Fifth Circuit precedent construing the-then most recent Texas

---

[1] The underlying factual background was described in full in the court's summary judgment opinion and will not be restated here. (Docket Entry No. 27).

case law.  (Docket Entry No. 27 at 8–9).  After this court ruled, the Texas Supreme Court issued *USAA Texas Lloyds Co. v. Menchaca*, —S.W.3d —, 2017 WL 1311752 (Tex. Apr. 7, 2017).  Metro contends that this opinion requires this court to alter or amend its holding on the extracontractual claims.  Lexington contends that no change is required.

Lexington also based its summary judgment motion on the ground that Metro had failed to cooperate with Lexington's investigation into the loss, relieving Lexington of any duty to pay more than the investigation supported.  After Lexington paid and Metro demanded more based on newly claimed losses, Lexington asked for documents and information substantiating Metro's demand for additional payment.  Metro refused.  The policy required Metro to "assist and cooperate" with Lexington in the investigation and adjustment.  Lexington invoked Metro's breach of the assist-and-cooperate clause and argued that the breach barred Metro from bringing this suit under the "no suits" clause.

The court found that until Metro complied with the duty to cooperate in the claims investigation, Lexington had no obligation to pay any part of the additional disputed portion of the claim.  Lexington also moved to strike Metro's experts, who had opined on the cause and amount of the additional damage the hotel incurred.  The court denied Lexington's motion to strike experts without prejudice reasserting it depending on what documents and information Metro produced.

Metro complied with Lexington's outstanding document requests.  Lexington now reurges its motion to strike Metro's experts, Metro responded, Lexington replied, and Metro surreplied.  (Docket Entry Nos. 20, 22, 24, 35, 36).  After the court's summary judgment opinion was issued, Metro has also moved to alter or amend its judgment under Rule 59(e).  (Docket Entry No. 28).  Lexington responded, Metro replied, and Lexington surreplied.  (Docket Entry Nos. 30, 34, 37).

2

Based on a careful review of the motions, responses, replies; surreplies; the record; the relevant law; and the arguments of counsel, this court denies Lexington's motion to strike Metro's experts and denies Metro's motion to alter or amend the judgment. The reasons for these rulings are stated below.

## II.     The Applicable Legal Standards

### A.     The Legal Standard to Alter or Amend a Judgment under Rule 59(e)

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) ("[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration."). A court retains the power to revise an interlocutory order before entering judgment adjudicating the parties' claims, rights, and liabilities. FED. R. CIV. P. 54(b). A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). A motion that asks the court to change an order or judgment is generally considered a motion to alter or amend under Rule 59(e). *eTool Development, Inc. v. Nat'l Semiconductor Corp.*, 881 F.Supp.2d 745, 748–49 (E.D. Tex. 2012).

A Rule 59(e) motion "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Changing an order or judgment under Rule 59(e) is an "extraordinary remedy" that courts use sparingly. *Templet*, 367 F.3d at 479; *see also* 11 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE

§ 2810.1 at 124 (2d ed. 1995). The Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). A motion to reconsider may not be used to relitigate matters, raise arguments, or submit evidence that could have been presented before the judgment or order was entered. 11 WRIGHT & MILLER § 2810.1 at 127–28 (footnotes omitted). "Relief . . . is also appropriate when there has been an intervening change in the controlling law." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *accord Arceneaux v. State Farm Fire & Cas. Co.*, No. 07-7701, 2008 WL 2067044, at *1 (E.D. La. May 14, 2008) ("To obtain relief under Rule 59(e), the movant must (1) show that its motion is necessary to correct a manifest error of law or fact, (2) present newly discovered or previously unavailable evidence, (3) show that its motion is necessary to prevent manifest injustice, or (4) show that its motion is justified by an intervening change in the controlling law.") (citation omitted).

### B. The Legal Standard to Strike Testimony of Witnesses with Specialized Knowledge

Federal Rule of Evidence 702 provides that a witness who is qualified by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the witness's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the witness has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Qualified witnesses may offer opinion testimony on industry standards or norms and whether they were followed in a particular case, as long as these opinions involve questions of

fact rather than purely legal matters. *Waco Int'l, Inc. v. KHK Scaffolding Houston, Inc.*, 278 F.3d 523, 533 (5th Cir. 2002).

The requirement that the testimony help "the trier of fact to understand the evidence or to determine a fact in issue" means that the evidence must be relevant. *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). Rule 401 defines relevant evidence as that having any tendency to make a fact that is of consequence in determining the action more probable or less probable than it otherwise would be. FED. R. EVID. 401. The *Daubert* "gatekeeping" obligation of the trial court applies to testimony based on scientific, technical, and other specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 147–48 (1999).

The party offering the testimony must prove by a preponderance of the evidence that the proffered testimony is relevant and admissible under Rule 702. *See Mathis*, 302 F.3d at 459–60. In determining the admissibility of expert testimony, the district court should give proper deference to the jury's role as the arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of a witness's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration. *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996); *see also Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562–63 (5th Cir. 2004) (it is "the role of the adversarial system, not the court, to highlight weak evidence"). The Supreme Court in *Daubert* made clear that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

**III.   Analysis**

    **A.   The Motion to Alter or Amend**

Metro alleged that Lexington breached Texas common-law and statutory duties of good faith and fair dealing. (Docket Entry No. 1-5 at ¶¶ 13–15). The standard for the common-law claim for bad-faith breach of the duty of good faith and fair dealing carries over to statutory liability claims under the Texas Insurance Code. Both have the same predicate for recovery. The absence of evidence on one disposes of the other. *See Reyna v. State Farm Lloyds*, Civ. No. 7:14-cv-420, 2016 WL 3654761, at *8 (S.D. Tex. July 8, 2016) (citing *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr.*, Inc., 324 S.W.3d 305, 316 (Tex. App.—El Paso 2010, pet. denied) (citing *Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922–23 (Tex. 2005) (per curiam)); *Emmert v. Progressive Cnty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied)).

Lexington moved for summary judgment on the ground that Metro did not present evidence of any injury independent of the injuries it claimed resulted from Lexington's denial of the disputed covered loss. (Docket Entry No. 21). Citing Fifth Circuit case law construing the then most-recent Texas Supreme Court authority, this court agreed and granted Lexington's summary judgment motion. (Docket Entry No. 27 at 8–9) (citing *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) (citing *Provident American Ins. Co. v. Castaneda*, 988 S.W.2d 189, 198–99 (Tex. 1998) ("There can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits.")); *see also Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 808 n.1 (5th Cir. 2010) (rejecting the plaintiff's argument that the "denial of insurance proceeds, standing alone, entitled it to recover on its extracontractual claims" because that

"assertion [did] not comport with this court's case law")).

Two weeks after the court granted the summary judgment motion, the Texas Supreme Court issued its opinion in *USAA Texas Lloyds Co. v. Menchaca*, —S.W.3d —, 2017 WL 1311752 (Tex. Apr. 7, 2017). In light of that intervening case law, Metro moved to alter or amend the judgment. (Docket Entry No. 28). *Menchaca* clarified that an insured's injury independent of the loss of policy benefits is not necessarily required for recovery on extracontractual bad-faith claims. *Menchaca*, 2017 WL 1311752, at *7–*9. When there is coverage under the policy and a breach, an insured may be able to recover. *Id.* Metro's failure to provide evidence of an independent injury was the basis for this court's summary judgment opinion. The parties agree that this ground no longer suffices as the basis to grant Lexington's summary judgment motion on Metro's extracontractual claims. The parties dispute whether *Menchaca* changes the result.

Lexington argues that Metro cannot succeed on its extracontractual claims because Lexington conducted as thorough and reasonable an investigation as it could given Metro's failure to cooperate, which impeded Lexington's investigation. Lexington argues that Metro cannot show that it suffered damage "caused by" any alleged statutory violation. *Menchaca*, 2017 WL 1311752, at *3 (Tex. Apr. 7, 2017) ("The Code grants insureds a private action against insurers that engage in certain discriminatory, unfair, deceptive, or bad-faith practices, and it permits insureds to recover 'actual damages . . . caused by' those practices."). In support of its argument, Metro pointed to the issues disputed by the parties' Rule 702 witnesses. Metro asserted that because it believes more money is owed under the policy, there is sufficient evidence of bad faith to survive summary judgment.

The main dispute is whether Lexington's reliance on its investigation and the experts it

7

retained to determine Metro's covered losses was reasonable. "So long as a bona fide coverage dispute exists, the insurer has complied with its duty of good faith and fair dealing even if the insurer's reasonable basis for denying the claim is determined to be erroneous." *Santacruz v. Allstate Tex. Lloyd's, Inc.*, 590 F. App'x 384, 387 (5th Cir. 2014). Conflicting opinions from the insured's experts do not alone show or raise an inference that the insurer acted unreasonably in relying on its own expert. *Thompson v. Zurich Am. Ins. Co.*, 664 F.3d 62, 67 (5th Cir. 2011). Metro must point to direct or circumstantial evidence showing that Lexington's experts' opinions were "questionable and that [Lexington] knew or should have known that the opinion was questionable." *Id.* (citing *Guajardo v. Liberty Mut. Ins. Co.*, 831 S.W.2d 358, 365 (Tex. App.—Corpus Christi 1992, writ denied)).

Metro argues that the investigation Lexington's three experts conducted was flawed. To raise an inference of bad faith, Metro must presents facts that would allow a finding that an omission or misstatement "in the expert's investigation is of such magnitude as to affirmatively cast doubt on the insurer's basis for denial." *Id.* at 68 (citing *Lyons v. Millers Cas. Ins. Co. of Texas*, 866 S.W.2d 597, 601 n.3 (Tex. 1993)). Lexington relied on three separate experts. Joseph Kennedy at LWG Consulting identified $272,738.04 in compensable actual-cash-value losses to Metro's HVAC system. (Docket Entry No. 21, Ex. A at ¶ 5). Howard Jones, and later Steve Hardgrave, at JS Held identified $412,961.56 in compensable actual-cash-value losses to the hotel building interiors. (*Id.*). Dr. James Bailey of Exponent, Inc.—who has a Ph.D. in engineering—found no covered roof damage because the problems resulted from age and poor maintenance, not from the recent hailstorm damage. (*Id.*). All reported their findings and the facts they relied on to Lexington.

Metro does not contend that any of the experts or their firms lacked relevant expertise or

8

experience. Metro instead argues that Lexington unreasonably relied on these experts because it began with the "erroneous assumption" that the hotel had been damaged years earlier during Hurricane Ike in 2008, not in the 2013 hailstorm. (Docket Entry No. 23 at 29). Bob Yazdani, the hotel owner, testified that "[a]fter [Hurricane] Ike, we had some roof blown away, and we had the water coming in . . . We had Ike damage, yes, sir." (Docket Entry No. 37, Ex. H at 177, 198). The primary dispute in this case is the roof's condition before the 2013 hailstorm. Lexington's consideration of roof-damage causes before 2013 is clearly reasonable. Metro does not point to any evidence showing that the consideration of evidence of the roof condition before the 2013 hailstorm was unreasonable.

Metro also argues that Dr. Bailey, Lexington's roof expert, conducted an unreasonable inspection by "eyeballing" the roof. Metro's only cite in support of this contention is its own retained expert's different finding on what caused the roof damage and when it occurred. Metro's expert, Billy Haley, is not an engineer or expert in roofs. He is a retained insurance adjuster. Haley criticized Dr. Bailey's inspection as substandard because "any reasonable inspection of the roof would have detected the presence of the Hydro-Stop coating on the roof indicating that the roof was not deteriorated or degraded." (Docket Entry No. 23, Ex. A at 7). Metro also argues that the investigation was unreasonable because Lexington did not inspect every one of the hotel rooms damaged in the 2013 hailstorm. (*Id.*, Ex. E at 93). In a similar case, the court rejected the insured's arguments that the insurer's failure to conduct certain tests was unreasonable. *Maynard v. State Farm Lloyds*, No. 3:00–CV–2428–M, 2002 WL 1461923, at *5 (N.D. Tex. July 2, 2002). The court noted that the insured did not present any evidence that "that such inspectors usually do [differently] in the process of completing an investigation." *Id.* Metro has presented no such evidence in this

9

case.

Even if Metro had shown that parts of Lexington's investigation were unreasonable—which Metro has not shown—Metro cannot show that Lexington's delay in paying was "caused by" flaws in the investigation. As this court earlier determined, Metro failed to cooperate with Lexington's reasonable demands for information and documents supporting Metro's ever-increasing damage and loss claims. The delay in the adjusting process was caused by Metro's own actions. (Docket Entry No. 27 at 10–17); *Menchaca*, 2017 WL 1311752, at *3 (Tex. Apr. 7, 2017). Texas law is clear that an insurer's reliance on an expert's opinion must be evaluated based on knowledge at the time of the dispute, not on information that is supplied or available later. *Thompson*, 664 F.3d at 67 (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) ("[W]hat is dispositive is whether, based upon the facts existing at the time of the denial, a reasonable insurer would have denied the claim."); *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990) ("Whether there is a reasonable basis for denial . . . must be judged by the facts before the insurer at the time the claim was denied.")). Lexington cannot reasonably be expected to consider information Metro refused to provide during the claim-adjustment work. On one hand, Metro withheld necessary information to adjust the claim, and on the other, it asserts that Lexington engaged in bad-faith delay during the claim-adjusting process. This argument fails.

Because summary judgment on Metro's extracontractual claims is still warranted, Metro's Rule 59(e) motion to alter or amend the judgment is denied. (Docket Entry No. 28).

### B. The Motion to Strike

Lexington moves to strike Metro's witnesses, Billy Haley, Hoyt Long, and Jed Taylor, because the foundation of their opinions is unreliable. Lexington also moves to strike a weather

report as untimely and unreliable.

Metro designated Bill Haley to opine on the "reasonable and necessary costs to restore the subject property to its pre-loss condition." (Docket Entry No. 12 at 1). Lexington argues that Haley relied only on what Metro told him about the condition of the property, pre-loss maintenance records that he did not include in his report, and a Google search. Metro responds with Haley's declaration stating that he based his opinions on interviews of persons with first-hand knowledge, review of maintenance records, Lexington's report of its pre-loss inspection of the hotel, review of videos of the hail damage, his own personal inspection, inspections done by contractors and professionals, Lexington's notes from the adjusting process, meteorological data from the internet, and Haley's personal experience. (Docket Entry No. 22, Ex. A). Lexington responds that this information revealed that the hotel and its roof had damage before the hail storm and cannot support Haley's opinion that the roof was damaged to the point of needing replacement during the storm. Lexington's argument for striking Haley's opinion testimony is another version of one of the key factual disputes—the timing, extent, and cause of the hotel's roof damage.[2] This dispute is not a proper basis for striking Haley's opinion testimony. *See Moore v. International Paint, LLC*, 547 F. App'x 513, 515 (5th Cir. 2013) (experts may rely on one version of disputed facts in forming their opinions); *Primrose Operating Co.,* 382 F.3d at 562 (questions about bases and sources of expert's opinion generally affect weight rather than admissibility, and should be left to the jury). Lexington's motion to strike Haley's opinion testimony is denied.

Lexington moves to strike the testimony from Metro's designated roof damage expert

---

[2] Lexington also seemingly argues that Metro's experts cannot testify about the size of the hail or subsequent hail damage because they did not have personal knowledge. Most experts are hired after an event to give opinions, despite their lack of personal knowledge of the events. The issue is whether the after-the-fact opinion is based on sufficient facts or data and methodology. FED. R. EVID. 702.

witness, Hoyt Long, for the same reasons it moved to strike Haley's testimony. Metro responds that Long's opinion is supported by his own inspections, interviews with witnesses who had personal knowledge, Lexington's pre-loss inspection, statements of Lexington's representatives, testing by third-party professionals, and Long's 25 years of experience in the roofing industry. (Docket Entry No. 22, Ex. B). Again, Lexington's argument for striking Long's testimony is the dispute over the timing, cause, and extent of the roof damage. This is not a proper basis for striking Long's testimony. *See Moore*, 547 F. App'x at 515; *Primrose Operating Co.*, 382 F.3d at 562. Lexington's motion to strike Long's opinion testimony is denied.

Finally, Lexington moves to strike Jed Taylor's testimony. Taylor inspected the hotel's roof on January 19, 2016, using thermal-imaging technology. Metro designated him to provide opinions about his inspection. Taylor's report states that Metro's roof had been "holding trapped moisture and [had] been doing so for an extended period of time." (Docket Entry No. 20, Ex. G). Lexington argues that this report, written over two and one-half years after the storm, is irrelevant to deciding what caused the roof damage. Metro responds that Taylor's testimony does not concern causation. Rather, if he is called to testify at trial, he will explain the techniques of thermal imaging, its purposes, and the results he obtained from using it. His testimony appears to be intended to help explain and support the conclusions Haley and Long reached about what caused the roof damage and its extent. Lexington argues that this after-the-fact thermal imaging is still irrelevant because it does not establish when the moisture became trapped in the roof. This is a basis for cross-examination, not striking. *See Moore*, 547 F. App'x at 515; *Primrose Operating Co.*, 382 F.3d at 562. Lexington's motion to strike Taylor's testimony is denied.

Finally, Lexington moves to strike a "WX" Report, a weather report Haley and Long used

12

in forming their conclusions about the cause and extent of the damage to the hotel's roof. Metro ordered the weather report from WeatherGuidance.com. The report states that it was created by Robert C. White, a meteorologist and forensic weather analyst. White was not designated by Metro as a retained expert and no report, resume, or other information were provided. This weather report was disclosed to Lexington June 27, 2016, months after Metro's designation deadline.

Metro responds that this weather report was provided before Long's deposition. Metro obtained the report after Long read the opinions of the meteorologist Lexington designated, Dr. Lee Branscombe. Long then decided that he wanted more weather information before his deposition. Metro contends this report is admissible as a supplement under Rule 26(e)(1), despite the fact the designation deadline had expired. Long states in his affidavit that he used the weather report to "support the other data [he] previously reviewed from other weather sources." (Docket Entry No. 22, Ex. B at ¶ 12). Long's affidavit states that it is "standard and generally accepted practice for roofing consultants to rely on third party weather sources to gauge the size of the hail, as well as to confirm that a hail event did in fact occur." (*Id.* at ¶ 10).

Experts may rely on facts that are otherwise inadmissible if of a type reasonably relied upon by experts in the particular field. FED. R. EVID. 703; *Maxwell v. Ford Motor Co.*, 160 F. App'x 420, 424 (5th Cir. 2005) (citing *Marcel v. Placid Oil Co.*, 11 F.3d 563, 567 n.6 (5th Cir. 1994)). Trial courts "should defer to the expert's opinion of what data they find reasonably reliable." *Maxwell*, 160 F. App'x at 424 (quoting *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1432 (5th Cir.1989)). The types of sources on which an expert may reasonably rely "is virtually infinite." *Cedar Lodge Plantation, LLC v. Cshv Fairway View I, LLC*, No. CV 13-00129, 2016 WL 7429171, at *2 (M.D. La. Dec. 23, 2016) (citing Jack B. Weinstein and Margaret A. Berger, 4 WEINSTEIN'S FEDERAL

EVIDENCE § 703.04[3], at 703-15 to 703-20 (2d ed. 2005)).

This weather report is one source Long used to form his opinion on the extent, timing, and cause of the roof damage. It is a type of evidence generally relied on to determine whether a storm event could have caused certain damage. Because the report was provided before Long was deposed, and because Metro has explained why it was filed late, there is no unfair prejudice to Lexington from admitting the report. The motion to strike is denied. *See Moore*, 547 F. App'x at 515; *Primrose Operating Co.*, 382 F.3d at 562.

Lexington's motion to strike Metro's experts is denied. (Docket Entry No. 20).

**IV.   Conclusion**

Lexington's motion to strike Metro's experts is denied. (Docket Entry No. 20). Metro's Rule 59(e) motion to alter or amend the judgment is denied. (Docket Entry No. 28).

SIGNED on July 25, 2017, at Houston, Texas.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　Lee H. Rosenthal
　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge